McCROSKEY, FELDMAN, COCHRANE & BROCK, PC v WATERS

Docket No, 136266. Submitted October 6, 1992, at Grand Rapids. Decided December 7, 1992, at 10:05 A.M.

McCroskey, Feldman, Cochrane & Brock, P.C., brought an action in the Muskegon Circuit Court against James L. Waters, seeking enforcement of an arbitrator's award in an action to enforce an employment agreement. The defendant, a member of the plaintiff law firm, decided to leave the law firm to practice elsewhere, and the employment agreement provided a mechanism for dividing an already existing legal fee under such circumstances. The court, Ronald H. Pannucci, J., entered judgment in favor of the plaintiff. The defendant appealed.

The Court of Appeals *held:*

1. The provisions of the employment contract do not provide for improper fee splitting or result in an unreasonable restriction on the defendant's ability to practice law. They reasonably assign to the plaintiff a ratable portion of a given fee on the basis of the stage of the litigation at the time of the defendant's departure.

2. The agreement simply was a mechanism for dividing an existing fee between the plaintiff firm and a departing attorney. It does not violate rule 1.5(e) of the Michigan Rules of Professional Conduct.

3. The agreement was not so overreaching as to amount to an actual restriction on the defendant's right to practice law. The agreement does not violate MRPC 5.6(a).

Affirmed.

ATTORNEYS — LAW FIRMS — DIVISION OF FEES.

An employment agreement between a law firm and its individual members that provides a mechanism for dividing an already existing fee in the event an individual member chooses to leave the firm to practice elsewhere does not violate the provision of the Michigan Rules of Professional Conduct that prohibits, in

REFERENCES

Am Jur 2d, Attorneys at Law §§ 237 *et seq.*.

Division of fees or compensation between cooperating attorneys. 73 ALR2d 991.

certain situations, the division of a fee between lawyers who are not in the same law firm or the provision that prohibits agreements restricting the right of a lawyer to practice after terminating a partnership or employment relationship (MRPC 1.5[e], 5.6[a]).

*McCroskey, Feldman, Cochrane & Brock, P.C.* (by *J. Walter Brock*), for the plaintiff.

*James L. Waters Law Firm, P.C.* (by *James L. Waters*), for the defendant.

Before: GRIFFIN, P.J., and NEFF and CORRIGAN, JJ.

GRIFFIN, P.J. Defendant appeals as of right a December 3, 1990, order of the Muskegon Circuit Court entering judgment on an arbitration award in favor of plaintiff. We affirm.

I

At issue in this appeal is the enforceability of an employment agreement entered into between defendant and his former law partners. Defendant is a former veteran director of plaintiff law firm. On or about January 31, 1988, defendant left the firm to start his own practice. About a year before his departure, defendant signed an employment contract containing the following provision, paragraph 17, governing the allocation of fees:

If a director considers leaving or leaves the corporation and desires to compete with the corporation or continue professional contact with clients he has represented while an employee of the firm, the following procedures will be followed:

\* \* \*

d. All files referred by a departing director to another counsel while an employee of the corpora-

tion shall remain the sole and exclusive property of the corporation, as well as any referral fees that may become due from such other counsel. In the event a referred client maintains his professional relationship with the departing director and a recovery is realized, the departing director must return all costs, and 75% of the fee to the corporation.

e. In the event any of the departing director's clients, other than those clients who are the subject of "d" above, should choose to have their case handled by the departing director, the departing director, in the event of recovery in such case(s), pending for trial or awaiting filing, shall immediately return to the corporation all case costs and 25% of all fees realized. 50% of any fee in excess of $20,000, shall be returned to the firm. E.G.— total fee = $30,000, 25% of first $20,000 = $5,000 and 50% of $10,000 = $5,000 or a total fee to the firm of $10,000.

f. All cases on appeal shall remain the sole and exclusive property of the corporation. In the event the departing director's client requests him to continue handling a case that is on appeal, without regard to whether or not briefs have been written, arguments have been completed, or the case has been returned for new trial, the departing director, in the event of recovery, shall immediately reimburse the corporation for all case costs and 75% of any fee recovered.

According to defendant, he paid plaintiff approximately $100,000 in fees pursuant to these provisions in the several months following his departure. Defendant thereafter disavowed the agreement, purportedly on the basis that the payments were unduly burdening his new law practice. Pursuant to a separate provision of the contract, the parties' dispute was submitted to arbitration. At the arbitration hearing, defendant testified that when he left the firm, he took with him approximately 180 client files. Of these files, approxi-

mately ninety-six were pending trial, thirty were on appeal, and the rest were unfiled. With regard to the agreement itself, defendant conceded that he was a member of the committee that drafted the agreement and that he voted in favor of it. Defendant also admitted that he told a previously departing director that he felt that the fee-splitting arrangement was valid and enforceable.

There was conflicting testimony at the hearing regarding the parties' intent in drafting the employment agreement. Defendant testified that the agreement was modified several times during the 1980s and that the modifications were intended to make departure unattractive by penalizing departing directors. In contrast, Robert Chessman, a director in plaintiff law firm, testified that the primary purpose of the fee allocation provision was to avoid the tedious and overwhelming task of having to divide the fee for each individual file on a quantum meruit basis. Although Chessman conceded that the percentages used for dividing a fee could have been more detailed and specific, he testified that the figures used were fairly reflective of the firm's contribution to any given file. Finally, Chessman testified that defendant directly advocated the adoption of several of the provisions at issue.

The arbitrators ruled in favor of plaintiff, finding that the employment agreement was valid and enforceable. Plaintiff then petitioned the circuit court for entry of judgment, and defendant moved to vacate the arbitrators' award. Following a hearing, the circuit court agreed with the arbitrators that the agreement was valid and entered judgment in favor of plaintiff.

II

On appeal, defendant contends that the fee-allo-

cation provisions of the employment contract should not be enforced because they violate public policy. Specifically, defendant argues that paragraphs 17(d) through (f) provide for improper fee splitting and result in an unreasonable restriction on his ability to practice law. We disagree.

Defendant's argument is premised on the assertion that the agreement in this case violates rules 1.5(e) and 5.6(a) of the Michigan Rules of Professional Conduct. These rules provide, in pertinent part:

> Rule 1.5(e). A division of a fee between lawyers who are not in the same firm may be made only if:
> (1) the client is advised of and does not object to the participation of all the lawyers involved; and
> (2) the total fee is reasonable.
> Rule 5.6. A lawyer shall not participate in offering or making:
> (a) a partnership or employment agreement that restricts the right of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement . . . .

After thorough review, we are not persuaded by defendant's argument that either of these ethical principles renders the fee-allocation provisions of the employment agreement invalid as a matter of law.

With regard to MRPC 1.5(e), it is arguable that paragraph 17 of the agreement provides for "a division of a fee between lawyers who are not in the same firm." However, we interpret the court rules in accordance with the intent and purpose behind them. *Larson v Auto-Owners Ins Co,* 194 Mich App 329, 332; 486 NW2d 128 (1992); *Michigan Basic Property Ins Ass'n v Hackert Furniture Distributing Co, Inc,* 194 Mich App 230, 234-235; 486 NW2d 68 (1992). MRPC 1.5(e) is designed to

prohibit brokering, to protect a client from clandestine payment and employment, and to prohibit aggrandizement of fees. See *Krajewski v Klawon,* 84 Mich App 532, 537; 270 NW2d 9 (1978) (interpreting DR 2-107, the predecessor of MRPC 1.5).[1] Plainly, none of these concerns is implicated in this case. The agreement is simply a mechanism for dividing an already existing fee. In other words, this is not a referral situation contemplated by the rule. Instead, the contract simply seeks to obviate time-consuming squabbles that formerly arose when plaintiff's entitlement to its fair share of any fee generated by a departing client's file was determined on a quantum merit basis. We agree with plaintiff that such arrangements, as long as they are reasonable, should be encouraged.

For similar reasons, we conclude that the agreement in this case does not violate MRPC 5.6(a). The provisions of paragraph 17 are not so overreaching that they amount to an actual restriction on defendant's right to practice law. Defendant's argument that the contract violates MRPC 5.6 because his payments to plaintiff decrease his new firm's cash flow and thus impair its ability to service its clients is unpersuasive. Defendant's proofs on this issue at the arbitration hearing were inadequate.

In sum, paragraph 17 of the contract reasonably assigns to plaintiff a ratable proportion of a given fee on the basis of the stage of the litigation at the time of departure. Although the percentages are arguably imperfect, we do not deem it appropriate to require precision. The contract is a reasonable attempt to relate plaintiff's fee entitlement to the amount of work done on a given file before it left

---

[1] MRPC 1.5(e) is substantially the same as DR 2-107. Significantly, however, the rule no longer requires that the division be made in proportion to the services performed by each attorney.

the firm. We hold that the contract at issue does not violate MRPC 1.5(e) or 5.6(a).

III

Defendant's remaining issue can be dispensed with summarily. Because the agreement in this case was valid and not illegal as defendant maintains, the arbitrators did not exceed their powers in enforcing it. *Detroit Automobile Inter-Ins Exchange v Gavin,* 416 Mich 407; 331 NW2d 418 (1982).

Affirmed.