907 P.2d 458 (1995)
In the Matter of the ESTATE OF Elena Rose KATCHATAG, Deceased.
Leonard T. KELLEY, Appellant,
v.
William J. DONOHUE, Appellee.
No. S-6530.
Supreme Court of Alaska.
December 8, 1995.
*459 Michaela Kelley, Kelley and Kelley, Anchorage, for Appellant.
William J. Donohue, William J. Donohue, P.C., Anchorage, for Appellee.
Before MOORE, C.J., and RABINOWITZ, MATTHEWS, COMPTON and EASTAUGH, JJ.

OPINION
EASTAUGH, Justice.

I. INTRODUCTION

This is a dispute between two attorneys regarding division of attorney's fees following the successful prosecution of a medical malpractice lawsuit for the death of Elena Katchatag.[1] Leonard Kelley claims he entered into a fee-splitting agreement with William Donohue. Donohue denies any such agreement. The probate court held that it had jurisdiction to decide the dispute and concluded that Kelley had no legally enforceable contingent fee contract. It later found that Kelley had waived a quantum meruit claim. Kelley argues the probate court had no jurisdiction to decide the dispute. We affirm.

II. FACTS AND PROCEEDINGS

In September 1990 Elena and Van Abel Katchatag contacted Kelley regarding a possible medical malpractice claim involving Elena. Kelley obtained releases for her medical records and conducted legal research. She died in December 1990. Kelley later explained in an affidavit that he decided it would be best to bring into the "case" (no formal claim or suit had then been filed) as co-counsel an attorney who specialized in medical malpractice, and spoke in late December with Donohue about co-counseling the Katchatag medical malpractice claim.
Kelley claimed that Donohue verbally agreed to co-counsel the case. Donohue, however, denies the existence of such an arrangement and instead claims that Kelley referred the Katchatags to him. Kelley initially asserted that he and Donohue agreed that Kelley would receive 20% of the attorney's fees, but would advance no costs. He later affied that Donohue agreed that costs would be divided on a fifty/fifty basis, that the contingency fee would initially be divided on a fifty/fifty basis, and that after the case was set for trial Kelley would receive 8% of the recovery and Donohue would receive 17% of the recovery (a thirty-two/sixty-eight division of fees).[2]
Kelley produced a copy of a letter, dated January 2, 1991, to Mr. Katchatag stating Donohue "has agreed to co-counsel Elaine's [sic] claim with me." He affied that he subsequently arranged a telephonic conference between Mr. Katchatag and Donohue. Kelley contended that without his knowledge, Donohue and Mr. Katchatag entered into a fee agreement which did not refer to Kelley as co-counsel and did not include the fee arrangement between Kelley and Donohue. Kelley affied that he transferred his Katchatag file to Donohue.
*460 Donohue states that the only documents Kelley prepared which Donohue found in his file were two letters to the Nome Hospital seeking medical records.[3] Kelley states that he forwarded to Donohue several excerpts of legal research relevant to the Katchatag lawsuit.
Donohue entered into a contingent fee contract with Mr. Katchatag in January 1991, opened Mrs. Katchatag's estate, filed the FTCA administrative claim in May 1991, and when the Government denied the administrative claim, filed an FTCA suit in 1992. In February 1993 attorney Jeffrey Haas and Donohue agreed in writing that Haas and Donohue would share the work, expenses, and attorney's fees equally. Mr. Katchatag agreed in writing to that arrangement. Donohue moved for and obtained probate court approval of the Donohue-Katchatag contingent fee contract in 1993.
Mr. Katchatag and his children prevailed in the wrongful death case in the U.S. District Court, receiving damages and costs totalling $1,053,475.15. Donohue and Haas advanced $34,130.33 in costs during the case; Kelley contributed no costs. By letter of March 3, 1994, Kelley congratulated Donohue on the "Katachag" [sic] result and made comments Donohue took to be a possible request for fees and costs. Donohue later argued that this was the first time he heard from Kelley regarding the Katchatag case since Donohue accepted representation of the Katchatags three or four years previously. Thereafter, Kelley and Donohue exchanged letters in which Kelley requested fees and Donohue denied the existence of any fee-splitting arrangement and accused Kelley of making fraudulent demands.[4]
After the United States satisfied the judgments, Donohue moved for probate court approval of the costs and attorney's fees, and shortly thereafter asked that court to delay ruling to give Kelley an opportunity to submit any claim for costs or fees.
Kelley submitted a "notice" to advise the probate court that he denied that court's jurisdiction, that he was not making a claim against the estate or the Katchatags, and that he should be permitted to pursue his dispute with Donohue in another forum. In response, Donohue submitted his affidavit, stating that he never agreed to be co-counsel with Kelley in this case, that he never received Kelley's letter to Mr. Katchatag, and that he never agreed to a fee-splitting agreement with Kelley.
In May 1994 the superior court conducted a hearing in the probate matter to approve, pursuant to Alaska Civil Rule 90.2, any attorney's fees and costs to be paid from the children's recoveries, and to resolve the attorneys' dispute about the appropriate division of fees. The court approved a total fee of $254,836, representing 25% of the net recovery, the maximum fee permitted under the FTCA, and approved the proposed division of those costs and fees among Mr. Katchatag and his three children in proportion to their individual federal judgments. There was no dispute as to those matters.
Donohue then presented evidence that Kelley was not entitled to any fee because Kelley did not enter into a written fee agreement *461 with Donohue or the Katchatags. The evidence included the affidavit of Van Abel Katchatag. Donohue also asserted that Kelley did little, if any, work on the case. He argued that Kelley's claim was contrary to Alaska Bar Rule 35(e).
Kelley appeared through counsel and argued that the probate court was not the proper forum to decide the Kelley-Donohue dispute. He asserted that he had a direct claim against Donohue for breach of contract and tort.
The superior court found that it had jurisdiction to allocate attorney's fees pursuant to Alaska Civil Rule 90.2 and AS 13.16.440. It found that there was no written fee agreement with Kelley. In reliance on Alaska Bar Rule 35(e) and AS 13.16.440, the court denied any fees to Kelley. The court, however, gave Kelley twenty days in which to make a quantum meruit claim and submit supporting information. Kelley did not file such a claim. Kelley objected to the proposed findings, conclusion, and order on the ground they resolved Kelley's dispute with Donohue; he also expressly conceded he had no enforceable contingency fee contract with the estate or personal representative. After the court entered the findings, conclusions, and order, Kelley moved for reconsideration; he submitted his affidavit in support. He there asserted for the first time that his agreement with Donohue was actually for 32% of the total fees (8% of the net recovery), not the 20% he had previously discussed. The court denied the motion for reconsideration, noting that Kelley had not filed a quantum meruit claim and had consequently waived his right to make any such claim.
This appeal followed.

III. DISCUSSION

The appeal presents two issues: (1) whether the probate court had jurisdiction over the Kelley-Donohue attorney's fees dispute; and (2) whether the probate court erred in concluding that Kelley had no valid, enforceable contingent fee contract with the estate, the personal representative, or Donohue.

A. Jurisdiction

The superior court relied on AS 13.16.440 and Civil Rule 90.2 in determining that it had jurisdiction over the fee allocation dispute between Donohue and Kelley.[5]
Kelley argues that the probate court erroneously assumed subject matter jurisdiction over his claims for breach of contract and tortious conduct by Donohue in conjunction with the Katchatag case. He asserts that his claims are unrelated to the Katchatag case and should be adjudicated in a separate forum.
The wrongful death action was brought for the benefit of Mr. Katchatag and the Katchatags' three minor children. Because minor children were involved, payment of any costs or attorney's fees from the proceeds required compliance with Alaska Civil Rule 90.2 and court approval. In re Estate of Brandon, 902 P.2d 1299 (Alaska 1995).
Civil Rule 90.2(a)(3) states:
(3) Attorneys' Fees and Costs. The court shall approve any attorneys' fees and costs that are to be paid from the settlement proceeds when the minor claimant is represented by counsel.[[6]] *462 Alaska R.Civ.P. 90.2(a)(3). Assuming Kelley's characterization of the fee allocation agreement is correct  that he had a separate contract with Donohue to work on the wrongful death case even though Kelley had no agreement with the Katchatags  Civil Rule 90.2 gave the probate court jurisdiction over the fee dispute because more than 90% of any fees owed to Kelley would have come from the proceeds to be paid to the Katchatag children.[7] Civil Rule 90.2 requires court approval of attorney's fees and costs paid from children's proceeds. Thus, in order to approve the allocation of any fees, the probate court had to have jurisdiction over the attorney's fee allocation dispute.[8] Moreover, Kelley submitted to the superior court's jurisdiction by participating in the dispute, and had previously invited Donohue to advise the court of the Kelley-Donohue "arrangement," apparently for the purpose of resolving their differences.[9] We conclude that the superior court did not err in deciding that it had jurisdiction pursuant to Rule 90.2 over the fee allocation dispute.[10]

B. Due Process

Kelley asserts that the probate court denied him due process by assuming jurisdiction. He argues that he should have the opportunity in a separate proceeding to prove the existence of a contract through full application of the discovery rules, including the use of depositions, interrogatories, and requests for production and admissions.
Kelley's due process claim is without merit. Kelley had actual notice of the issues before the probate court and he participated in the proceedings. He was represented by counsel at the hearing which addressed the fee dispute. He filed motions, memoranda, and exhibits with the probate court. When he moved for reconsideration, he filed his affidavit averring facts regarding the pending fee dispute. The probate court permitted Kelley to review Donohue's Katchatag file through 1992 for the purpose of presenting a quantum meruit claim for attorney's fees. Thus, the court provided him the opportunity to prove the value of services he performed on the case.
Kelley cannot complain that the probate court denied him an opportunity to engage in discovery in the probate proceeding, because he never attempted to engage in any discovery that might have supported a claim for a share of the attorney's fees. Given the willingness of the court to permit a quantum meruit claim and to allow him access to a *463 portion of Donohue's Katchatag file, we cannot assume that the court would have precluded an attempt by Kelley to engage in discovery.
Further, Kelley has identified no specific evidence or type of evidence that he would offer in a separate forum to prove the existence of an enforceable fee allocation agreement. He consequently fails to demonstrate how he was denied due process.[11]

C. Fee Contract

The probate court held that "Kelley has no legally enforceable contingent fee contract requiring any payment of any costs and/or attorney's fees." It held that such a contract must be in writing and must be approved by the client pursuant to Alaska Bar Rule 35(e).
Kelley argues that the court erroneously applied Bar Rule 35. He claims that the rule presupposes that more than one attorney enters into a fee arrangement directly with the client, and consequently does not apply to the instant case because the agreement here was between Kelley and Donohue, and did not involve the clients, the Katchatags.[12] Kelley reasons that Donohue "constructively evicted Kelley from the process and requirements of Bar Rule 35(e) by entering into a fee arrangement with the client without advising the client or Kelley of the circumstances and agreement."[13] He claims that he has a separate basis for substantive recovery against Donohue in contract and tort.
In Citizens Coalition for Tort Reform, Inc. v. McAlpine, 810 P.2d 162 (Alaska 1991), we implicitly held that Bar Rules operate with the force of law.[14] Furthermore, we acknowledged that contingent fee agreements are treated differently than other contracts.[15] Thus, contrary to Kelley's assertion otherwise, the Alaska Bar Rules apply to this case.
Alaska Bar Rule 35 states in relevant part:
(c) Contingent Fees. A fee may be contingent on the outcome of the matter for which the service is rendered, except in a matter in which a contingent fee is prohibited by Section (d) of this rule, or by other law or court rules or decisions. A contingent fee agreement will be in writing and will state the method by which the fee is to be determined....
....
(e) Fee Divisions Between Attorneys. A division of fees between attorneys who are *464 not in the same law firm may be made only if:
(1) the division is in proportion to the services performed by each attorney or, by written agreement with the client, each attorney assumes joint responsibility for the representation;
(2) the client is advised of and does not object to the participation of all the attorneys involved; and
(3) the total fee is reasonable.
Donohue and Mr. Katchatag entered into a written contingent fee agreement. Donohue also entered into a written fee-splitting arrangement with Haas; Mr. Katchatag approved that arrangement in writing.
It is undisputed that Kelley and Mr. Katchatag did not enter into a written contingent fee agreement, and that Kelley and Donohue did not enter into a written fee-splitting agreement. Kelley claims that Bar Rule 35(e) should not prevent him from enforcing the oral fee-splitting agreement he claims he had with Donohue.
The probate court did not err in determining that the alleged fee-splitting agreement was unenforceable. Mr. Katchatag denied in his affidavit agreeing to let Kelley represent him or the children in the case. Kelley did not aver in his affidavit that Mr. Katchatag had consented to representation by Kelley. Thus, it was undisputed that Bar Rule 35(e)(2) was not satisfied.
Further, because the alleged agreement for division of fees was unwritten, Kelley could have enforced it and obtained a portion of the fees only if the proposed division was "in proportion to the services performed by each attorney." Alaska Bar R. 35(e)(1). It was undisputed that any services Kelley performed for the Katchatags were minimal. As Kelley described it, however, the alleged agreement called for a division based on fixed percentages that would have given Kelley a substantial share of the fees. As Kelley described it, the agreement was unenforceable because it called for a fee division that was not in proportion to the services actually provided by Kelley and Donohue.
Kaplan v. Pavalon & Gifford, 12 F.3d 87 (7th Cir.1993), was factually similar to the instant case. Kaplan, an attorney, agreed to represent a minor child in a medical malpractice suit. Id. at 88. Kaplan referred the case to Gifford, a medical malpractice attorney, and the child's parents agreed to retain Gifford as additional counsel. Id. Kaplan claimed that he and Gifford agreed that Kaplan would receive one-third of the attorney's fees. Id. Gifford denied such an agreement. Id. Gifford entered into a written contingency fee agreement with the parents. Id. After the child received the settlement, Kaplan demanded payment under the alleged oral fee-sharing agreement. Gifford refused. Id. at 89. The court held under Illinois law[16] that the fee-sharing agreement, which was not in writing and not signed by the client, was unenforceable as a matter of public policy. Id. at 92. The court stated, "Our paramount concern must be the effect these fee-sharing agreements have on the clients, not the attorneys involved." Id. (quoting Holstein v. Grossman, 246 Ill. App.3d 719, 186 Ill.Dec. 592, 604, 616 N.E.2d 1224, 1236 (1993)).
We conclude that the probate court did not err in holding that no valid enforceable fee-sharing contract exists.
Kelley had the opportunity to receive compensation for any work he did on the case on a quantum meruit basis, but waived that claim.[17] The Seventh Circuit's holding in Kaplan  that oral fee-splitting agreements between attorneys in contingency fee cases are not enforced as a matter of public policy  provides sound guidance in the instant case. The interest of the client in knowing *465 about all fee-splitting contracts which affect his or her case outweighs the minimal burden imposed on the attorneys to reduce their agreements to writing and obtain client consent.

IV. CONCLUSION

The superior court had jurisdiction to apportion the attorney's fees and consider whether Kelley was entitled to a part of those fees. The superior court did not err in applying Bar Rule 35(e) to hold the alleged agreement was unenforceable. Thus, we AFFIRM the judgment below.[18]
NOTES
[1] Through Donohue, Mr. Katchatag, for himself, his wife's estate, and their three children, filed an administrative claim under the Federal Tort Claims Act (FTCA) (28 U.S.C. § 2671, et seq. (1988)) alleging failure of Norton Sound Regional Hospital (NSRH) to diagnose and treat Mrs. Katchatag's cervical cancer, resulting in her death. The Department of Health and Human Services denied the claim. Mr. Katchatag then sued the NSRH and the United States in the U.S. District Court. In February 1994 the court entered judgments awarding plaintiffs approximately $1,000,000 on those claims.
[2] The Federal Torts Claim Act imposes a 25% maximum on attorney's fees. 28 U.S.C. § 2678 (1988).
[3] Donohue notes that Kelley later produced two documents with his motion for reconsideration which were not in Donohue's file, but which Kelley found after the probate judge ruled against him. Kelley produced a copy of a letter he allegedly wrote to Mr. Katchatag and a handwritten memo to his file regarding his alleged fee-splitting agreement with Donohue.
[4] Donohue, in response to Kelley's March 3 letter, wrote that he understood Kelley had expended no time or costs in the case and requested a detailed billing demonstrating otherwise. Kelley wrote in response that he had no costs in the case, but that they had "a deal" and suggested that one of them advise the probate court of their arrangement. He also inquired about Haas and his involvement in the case. He expressed his intention that Donohue pay Kelley "the agreed upon fee." Donohue wrote back denying the existence of an arrangement and asked how much Kelley was claiming. Kelley responded that they had agreed Donohue would handle most of the case, but Kelley would handle client contact and accept 20% of the attorney's fees. After Kelley telephoned Mr. Katchatag during this exchange of correspondence, Donohue wrote Kelley, stating that Kelley had no right to contact Donohue's client and accusing Kelley of making fraudulent demands. In an April letter, Mr. Katchatag told Kelley that he never agreed to the arrangement alleged by Kelley, that Kelley was not his lawyer, that Kelley did no work in the case, and that Kelley should get no fee.
[5] Whether a court has jurisdiction is a question of law which we review using our independent judgment. See Alaska Workmen's Compensation Bd. v. Marsh, 550 P.2d 805, 807 (1976) (reviewing as a question of law whether the Board had jurisdiction to hear a claim when a suit for the same injuries was pending in the superior court). We also apply our independent judgment when reviewing rulings which present questions of law. See Disciplinary Matter Involving Wiederholt, 877 P.2d 765, 767 (Alaska 1994) (applying standard in interpreting Alaska Bar Rule 22(n)); Novak v. Orca Oil Co., 875 P.2d 756, 759 n. 4 (Alaska 1994) (applying standard in interpreting Civil Rule 41(e)). On questions of law, our "duty is to adopt the rule of law that is most persuasive in light of precedent, reason, and policy." Guin v. Ha, 591 P.2d 1281, 1284 n. 6 (Alaska 1979).
[6] Although Rule 90.2(a)(3) refers to "settlement" and not "judgment," it applies to proceeds recovered as a result of a judgment in favor of a minor. Rule 90.2(d) provides that "[p]roceeds resulting from a judgment in favor of a minor must be disbursed as set forth in paragraph (b)." Rule 90.2(b) applies to disbursement of settlement proceeds, and requires an order for payment of attorney's fees and costs. Alaska R.Civ.P. 90.2(b)(1). Because the rule treats disbursements of proceeds from judgments the same as disbursements of proceeds from settlements, attorney's fees and costs may not be paid from the proceeds of a judgment without court approval.
[7] The checks satisfying the judgments for the three children totalled $967,500. The check satisfying Mr. Katchatag's judgment was $85,975. The children's judgments represented more than 90% of the total recovered.
[8] The Ohio Supreme Court addressed an argument similar to that made by Kelley. In Re Guardianship of Jadwisiak, 64 Ohio St.3d 176, 593 N.E.2d 1379 (1992). The court there held:

[A] probate court, in order to maintain control over any personal injury settlement entered into on behalf of a ward under its protection, has subject matter jurisdiction over the entire amount of settlement funds, which includes attorney's fees to be drawn therefrom.... In addition, as already stated, although attorney fees are appropriate, they may be drawn from the ward's estate only after the probate court approves the fees.... Appellant's argument that his portion of the attorney fees was never a part of the ward's estate is, therefore, without merit.
Id. at 1383-84.
[9] Kelley's March 23, 1994 letter to Donohue acknowledged the probate court's jurisdiction: "Feel free to advise Judge Tunley of our arrangement, if you want me to contact him, I will...."
[10] Because we hold that the probate court had jurisdiction under Civil Rule 90.2, we need not determine whether, as Donohue argues, AS 13.16.440 also conferred jurisdiction. That statute states:

Proceedings for review of employment of agents and compensation of personal representatives of employees of estate. After notice to all interested persons or on petition of an interested person or on appropriate motion if administration is supervised, the propriety of employment of any person by a personal representative including any attorney, ... the reasonableness of compensation of any person so employed, or the reasonableness of the compensation determined by the personal representative for the personal representative's services, may be reviewed by the [probate] court.
AS 13.16.440 (emphasis added).
[11] Kelley also complains that he was denied due process because Judge Tunley was involved in the Katchatag case and had access to unrelated information that created a bias against Kelley. Because Kelley fails to demonstrate any facts that would permit a finding of bias on the part of Judge Tunley, we conclude that this claim is without merit.

Additionally, Kelley argues that he was denied equal protection because he "received unequal application of the law by the Court system." Kelley, however, fails to support that claim. Arguments not sufficiently supported are waived. Gates v. City of Tenakee Springs, 822 P.2d 455, 460 (Alaska 1991).
[12] Kelley also argues that the superior court erred in applying the Alaska Rules of Professional Conduct to this dispute. The court's findings, conclusion and order, however, applied Alaska Bar Rule 35, not the Rules of Professional Conduct.
[13] Kelley did not assert in the probate court that he had contacted Donohue or the Katchatags between the time he referred the Katchatags to Donohue in December 1990 and the time he learned of the judgments in March 1994 for the purpose of demanding that he be permitted to participate in the prosecution of the claim.
[14] We there acknowledged our extensive rule-making authority arising from the Alaska Constitution. Citizens Coalition for Tort Reform, Inc. v. McAlpine, 810 P.2d 162, 164-65 (Alaska 1991). We noted that we have repeatedly exercised our inherent judicial power to regulate the practice of law in the state: "In exercise of our inherent power, we have adopted rules that govern beyond the `administration ... practice and procedure' limitations of article IV, section 15, most notably the Alaska Bar Rules and the Code of Professional Responsibility." Id. at 165.
[15] We stated, "Both the Alaska Bar Rules and the Code of Professional Responsibility already contain court rules that regulate contingent fees." Id. at 165. We later concluded "a limit on attorneys' contingent fees is properly classifiable as a rule of court." Id. at 167. We also noted, "Bar Rule 35 is essentially equivalent to Model Rules of Professional Conduct Rule 1.5. In addition to the reasonableness limit, the Rule also imposes requirements for the actual form a contingent fee agreement must take." Id. at 166 n. 6.
[16] The court relied on Rule 2-107 of the Illinois Code of Professional Responsibility. Kaplan v. Pavalon & Gifford, 12 F.3d 87, 89 (7th Cir.1993). Rule 2-107 essentially stated that for a lawyer to divide a fee with another lawyer who is not in his law firm, the client must consent in writing to the employment of the other lawyer, and the writing must disclose that a division of fees will be made, the basis upon which the division will be made, including the economic benefit to be received by the other lawyer, and the responsibility to be assumed by the other lawyer. Id.
[17] To the extent he may have sought a fee disproportionate to the services he performed, Bar Rule 35(e) would have controlled.
[18] Although we hold that Bar Rule 35(e) precludes enforcement of that portion of the alleged Kelley-Donohue contract calling for a division of fees not in proportion to the services actually performed, Kelley was not necessarily foreclosed from claiming damages he may have incurred in reliance on the contract he claims to have made with Donohue. Considering the record before the probate court and this court, however, it appears unlikely that Kelley relied on the alleged agreement to his detriment. Further, such reliance damages could not include the value of any services Kelley provided in the Katchatag case, because Kelley waived an opportunity to seek a quantum meruit recovery in the probate court. Res judicata consequently would bar any later attempt to recover the value of services performed in that case. See North Star Terminal and Stevedore Co. v. State, 857 P.2d 335, 337 (Alaska 1993) (quoting Restatement (Second) of Judgments § 17 (1982)) ("A judgment [between parties in a former adjudication] ... is conclusive in a subsequent action between [the parties] on the same or a different claim, with respect to any issue actually litigated and determined if its determination was essential to that judgment.").

We express no opinion about whether Kelley could have asserted that Donohue breached duties to Kelley by failing to involve Kelley with the prosecution of the case.