94 P.3d 1266 (2004)
NORTON FRICKEY, P.C., Plaintiff-Appellee,
v.
JAMES B. TURNER, P.C., a professional corporation, Defendant-Appellant.
No. 03CA0236.
Colorado Court of Appeals, Div. IV.
June 17, 2004.
Weeks & Luchetta, LLP, Jeffrey L. Weeks, Colorado Springs, Colorado, for Plaintiff-Appellee.
James B. Turner, P.C., James B. Turner, Colorado Springs, Colorado, for Defendant-Appellant.
Opinion by Judge ROY.
In this contract dispute between James B. Turner, P.C. (attorney), and Norton Frickey, P.C. (the firm), attorney appeals from a judgment entered upon a jury verdict. His sole contention on appeal is that the trial court erred when it ruled on a pretrial motion that the contract to apportion attorney fees upon attorney's departure from the firm was enforceable in accordance with its terms and *1267 was not contrary to public policy. We disagree and therefore affirm.
The following facts are undisputed. The firm is engaged in the practice of law primarily as plaintiff's counsel in contingent fee personal injury cases. In March 1994, attorney, who had been associated with the firm for several years, chose to affiliate with another firm (new firm). The firm notified the clients served by attorney and gave them an option of following attorney or remaining with the firm. Approximately sixty clients chose to follow attorney. On the last day of attorney's affiliation with the firm, the parties entered into a final settlement agreement and mutual release (agreement), stating in relevant part:
With respect to clients of [the firm] for whom [attorney] provided legal services during his affiliation with [the firm], and who subsequently leave [the firm] to receive legal services from [attorney], [attorney] agrees to pay [the firm]: (1) All costs advanced by [the firm] on behalf of said clients; and (2) forty percent (40%) of the amount of money received by [attorney] from or on behalf of said clients, whether through settlement, payment of a judgment or otherwise....
This agreement has been reached after thorough bargaining and negotiation and represents a mutually agreeable compromise and accord and satisfaction of any and all claims of the parties against each other.
Attorney paid the agreed upon fees and costs until late 1998, at which time four cases remained unresolved. Upon resolution of those cases, attorney refused to pay the firm the agreed upon portion of attorney fees generated.
The firm filed this action alleging breach of contract against both attorney and his new firm. The action against the new firm was the subject of a separate appeal. Norton Frickey, P.C. v. Gaddis, Kin & Herd, P.C., (Colo.App. No. 03CA0187, Apr. 8, 2004), 2004 WL 743922(not published pursuant to C.A.R. 35(f))(new firm not separately liable to firm for attorney fees when it signed the agreement acknowledging and agreeing to accommodate the fee and cost obligations contained in the agreement).
The firm and attorney filed cross-motions for summary judgment on the legality of the agreement. In attorney's motion, he argued that the agreement was unenforceable because it violated Colo. RPC 1.5, thus leaving the firm only with a claim in quantum meruit. The firm took the contrary position. The trial court denied both motions, but concluded that the contract was not void and was enforceable in accordance with its terms.
The matter then proceeded to trial on the issue of whether the agreement had been, as attorney asserted, orally modified. A jury found that it had not and awarded the firm approximately $140,000 plus interest and costs.

I.
Attorney contends that the agreement is void and unenforceable because it violates Colo. RPC 1.5(d). We disagree.
Courts will not enforce contracts or contract terms that are void as contrary to public policy. A contract provision is void if the interest in enforcing the provision is clearly outweighed by a contrary public policy. Fed. Deposit Ins. Corp. v. Am. Cas. Co., 843 P.2d 1285 (Colo.1992).
The Colorado Rules of Professional Conduct were adopted by the supreme court in 1992, effective January 1, 1993, and are derived from the American Bar Association Model Rules of Professional Conduct. See Model Rules of Prof'l Conduct Annotated (5th ed.2003). Colo. RPC 1.5, entitled "Fees," states in relevant part:
(d) Other than in connection with the sale of a law practice pursuant to Rule 1.17, a division of a fee between lawyers who are not in the same firm may be made only if:
(1) the division is in proportion to the services performed and responsibility assumed by each lawyer;
(2) the client consents to the employment of an additional lawyer after a full disclosure of the division of fees to be made;
(3) the total fee is reasonable; and
(4) the division is set forth in writing signed by the lawyers and by the client with informed consent.
*1268 The comment to the rule states, in pertinent part:
A division of fee is a single billing to a client covering the fee of two or more lawyers who are not in the same firm. A division of fee facilitates association of more than one lawyer in a matter in which neither alone could serve the client as well, and most often is used when the fee is contingent and the division is between a referring lawyer and a trial specialist. Paragraph (d) permits the lawyers to divide a fee on the basis of the proportion of services they render and responsibility assumed by each. The client must consent to the fee division in writing. The client must be advised of and agree to the share of the fee that each lawyer is to receive.
The policy behind this rule is that clients should be able to choose which attorney finally represents them and the type of legal fees to be charged. Baron v. Mullinax, Wells, Mauzy & Baab, Inc., 623 S.W.2d 457, 461 (Tex.App.1981); see Tomar, Seliger, Simonoff, Adourian & O'Brien, P.C. v. Snyder, 601 A.2d 1056, 1058 (Del.Super.Ct.1990)(rule "formulated to prohibit brokering, to protect a client from clandestine payment and employment, and to prevent aggrandizement of fees" (quoting Vogelhut v. Kandel, 308 Md. 183, 517 A.2d 1092, 1096 (1986))); Jay Tuley, Comment, Fee Sharing Agreements & Their Enforceability Without Client Consent, 22 J. Legal Prof. 375, 382-83 (1998)(rule protects clients from excessive attorneys fees and possible representational problems).
Colo. RPC 1.5(d) most commonly applies in disputes concerning the apportionment of a contingent fee between attorneys who separately represented the same client at different stages of a matter. Courts addressing those fee disputes require attorneys to abide by that state's equivalent to Colo. RPC 1.5(d), and when they do not, courts have held that the fee agreement is void as contrary to public policy and unenforceable. See, e.g., Dragelevich v. Kohn, Milstein, Cohen & Hausfeld, 755 F.Supp. 189 (N.D.Ohio 1990); In re Estate of Katchatag, 907 P.2d 458 (Alaska 1995); Holstein v. Grossman, 246 Ill.App.3d 719, 186 Ill.Dec. 592, 616 N.E.2d 1224 (1993); Londoff v. Vuylsteke, 996 S.W.2d 553 (Mo.Ct.App.1999).
However, courts addressing an agreement to apportion fees upon the departure of an attorney from a law firm have concluded that such agreements are not subject to that state's equivalent to Colo. RPC 1.5(d), and therefore such agreements are not void and unenforceable. See, e.g., Tomar, Seliger, Simonoff, Adourian & O'Brien, P.C. v. Snyder, supra; Miller v. Jacobs & Goodman, P.A., 699 So.2d 729 (Fla.Dist.Ct.App.1997); Romanek v. Connelly, 324 Ill.App.3d 393, 257 Ill.Dec. 436, 753 N.E.2d 1062 (2001); McCroskey, Feldman, Cochrane & Brock, P.C. v. Waters, 197 Mich.App. 282, 494 N.W.2d 826 (1992); Hendler & Murray v. Lambert, 147 A.D.2d 444, 537 N.Y.S.2d 560 (N.Y.App.Div.1989); Baron v. Mullinax, Wells, Mauzy & Baab, Inc., supra; Restatement (Third) of the Law Governing Lawyers § 47 cmt. g (2000).
We initially note that several of the courts concluding that their equivalent to Colo. RPC 1.5 does not apply in these circumstances have a version that includes an additional provision: "Notwithstanding Rule 1.5(f) [Colo. RPC 1.5(d)], a payment may be made to a lawyer formerly in the firm, pursuant to a separation or retirement agreement." Ill. RPC 1.5(j); see Romanek v. Connelly, supra; Hendler & Murray v. Lambert, supra; Baron v. Mullinax, Wells, Mauzy & Baab, Inc., supra. This provision is a carryover from DR 2-107(B), which contained an almost identical provision. One noted reference states:
Model Rule 1.5 does not contain similar language (although a number of states added it when they adopted the Rules), but there is no indication in the rule or its accompanying comment that a fundamental departure from DR 2-107(B) was intended by the deletion.
Fees: Division Among Lawyers, ABA/BNA Lawyers' Manual on Prof'l Conduct No. 232, at 41:710 (Oct. 24, 2001).
However, other jurisdictions with versions similar to Colorado's RPC 1.5 have concluded that the rule does not apply to the division of fees between a firm and a departing attorney and have enforced apportionment provisions in separation agreements. See Tomar, Seliger, Simonoff, Adourian & O'Brien, P.C. v. *1269 Snyder, supra; Miller v. Jacobs & Goodman, P.A., supra; McCroskey, Feldman, Cochrane & Brock, P.C. v. Waters, supra.
Most of these latter courts reasoned that the apportionment provision in a separation agreement was enforceable and not against public policy because it had no effect on clients. One court rejected an argument that a post-termination fee allocation provision placed an undue economic burden on a client's freedom to choose legal representation. Miller v. Jacobs & Goodman, P.A., supra, 699 So.2d at 731-32. Another court explained that a fee-allocation provision between a departing attorney and his or her firm was "simply a mechanism for dividing an already existing fee," and therefore did not implicate the policies behind RPC 1.5. McCroskey, Feldman, Cochrane & Brock, P.C. v. Waters, supra, 494 N.W.2d at 828. Yet another court stated that because the agreement was between a firm and a departing associate during "the overall process of his separation" from the firm, clients were in no way affected by the agreement. Baron v. Mullinax, Wells, Mauzy & Baab, Inc., supra, 623 S.W.2d at 462; see also Tomar, Seliger, Simonoff, Adourian & O'Brien, P.C. v. Snyder, supra.
In McCroskey, Feldman, Cochrane & Brock, P.C. v. Waters, supra, 494 N.W.2d at 828, the court concluded that such agreements actually benefit clients, as well as attorneys and courts, because they seek to "obviate time-consuming squabbles that formerly arose when [the firm's] entitlement to its fair share of any fee generated by a departing client's file was determined on a quantum mer[u]it basis." It stated that "such arrangements, as long as they are reasonable, should be encouraged."
We are persuaded by the reasoning by which courts have upheld attorney separation agreements under rules similar to the Colorado rule.
Most importantly, in our view, the clients here benefited from the agreement. When attorney gave notice to the firm that he was leaving, the firm sent letters to attorney's clients allowing them to choose between representation by the firm or attorney. This permitted the clients to choose their attorney freely. After attorney departed the firm, the clients entered into a similar contingent fee agreement with attorney and the new firm with the same contingent fee structure. When the claims were resolved, the clients were paid the net proceeds of the settlement, and attorney then disbursed the attorney fees and costs to the firm, the new firm, and himself in accordance with the governing agreements. The clients were not charged additional fees as a result of the agreement, nor were they in any way deceived or misled. Therefore, the clients' freedom to choose legal representation was in no way compromised, see Miller v. Jacobs & Goodman, P.A., supra, and the public policy of protecting clients was in no way implicated.
Further, in our view, the agreement benefited the clients by resolving the distribution of the future fees between attorney and the firm on a global basis, thereby eliminating subsequent case-by-case negotiations, confrontations, and the possibility of litigation, which might delay the distribution of, or encumber, the clients' share of the proceeds, or a portion thereof. Attorney and the firm were simply dividing an already existing fee. See McCroskey, Feldman, Cochrane & Brock, P.C. v. Waters, supra. We agree with the court in McCroskey that such arrangements should be encouraged so long as they are reasonable.
In addition, Colo. RPC 1.5 has no application to the division of fees within a firm, and therefore, there is no requirement within the context of a law firm that (1) the fee division be reasonable or in proportion to the services performed or the responsibility assumed; (2) the clients be informed; or (3) the clients consent. See Tomar, Seliger, Simonoff, Adourian & O'Brien, P.C. v. Snyder, supra, 601 A.2d at 1059; Baron v. Mullinax, Wells, Mauzy & Baab, Inc., supra, 623 S.W.2d at 461-62; Restatement (Third) of the Law Governing Lawyers §§ 9, 47 cmt. g (2000). Here, the agreement between the firm and attorney was entered into as part of the process of attorney's separation from the firm and was accomplished while attorney was employed by the firm.
We note that the American Bar Association added a comment to Model Rules of Prof'l Conduct R. 1.5 in 2002. That comment *1270 states that the counterpart of Colo. RPC 1.5(d) "does not prohibit or regulate division of fees to be received in the future for work done when lawyers were previously associated in a law firm." Amendments to model codes made by the publisher subsequent to adoption by the legislature are persuasive authority in construing an otherwise silent statute based on the model code. See Pueblo Bancorporation v. Lindoe, Inc., 63 P.3d 353, 367-68 (Colo.2003). The same should be equally true of court rules.
We also note that an express exception to Colo. RPC 1.5 is Colo. RPC 1.17, which permits the sale of all, or a portion, of a practice of law with some limitations. In adopting Colo. RPC 1.17, the supreme court added a provision not included in the model rules, which states:
(i) Notwithstanding Rule 1.5(d), the purchase price for the practice may be based upon a portion of the fees collected from the clients of the law practice, even if the division of such fees is not in proportion to the services performed or the responsibilities assumed by the seller and purchaser.
Compare Colo. RPC 1.17 with Model Rules of Prof'l Conduct R. 1.17 (2003). Colo. RPC 1.17 was designed to permit solo practitioners to sell their practice in much the same way as withdrawing or retiring partners and shareholders in firms, in effect, do when the firm pays for their interest in the practice with future installment payments or agrees to continue the salary and benefits for a period of time without requiring the withdrawing or retiring attorney to perform any services. We are aware that Colo. RPC 1.17 specifically exempts from its application the withdrawal or retirement from a partnership or professional corporation. See Colo. RPC 1.17(h). That exemption does not, in our view, dilute the significance of the fact that there are circumstances in which fees can be divided between attorneys without regard to the value of the services rendered or the responsibility assumed, and without the consent of the client.
Further support for our conclusion comes from the scope section of the Rules of Professional Conduct, which states that the rules are not designed to alter civil liability, nor do they serve as a basis for such liability. Colo. RPC Scope; Olsen & Brown v. City of Englewood, 889 P.2d 673, 676 (Colo.1995); see also Astarte, Inc. v. Pac. Indus. Sys., Inc., 865 F.Supp. 693, 706 (D.Colo.1994)(under Colorado law, "ethical codes are not designed to prescribe standards for civil liability of attorneys and do not create a private cause of action"); Taylor v. Grogan, 900 P.2d 60, 63 (Colo.1995)(the Code of Professional Responsibility states that it does not "define standards for civil liability of lawyers for professional conduct"); Bryant v. Hand, 158 Colo. 56, 59, 404 P.2d 521, 522-23 (1965)("[t]he canons of ethics are not binding on the courts and do not have the force of law"). Rather, such rules provide guidance in the attorney-client relationship and serve as a mechanism of internal professional discipline. Colo. RPC Scope; Olsen & Brown v. City of Englewood, supra, 889 P.2d at 676.
Interpreting the scope language in the context of Colo. RPC 1.5(d), we agree with a Texas court when it concluded that the rule "should not be too readily construed as a license for attorneys to break a promise, go back on their word, or decline to fulfill an obligation, in the name of legal ethics." Baron v. Mullinax, Wells, Mauzy & Baab, Inc., supra, 623 S.W.2d at 462.

II.
We are not persuaded by attorney's argument that People v. Wilson, 953 P.2d 1292 (Colo.1998), requires a different result.
Wilson addressed the rule in an attorney discipline proceeding where the supreme court determined that a firm's "Covenant Not to Steal," requiring departing lawyers to compensate the firm seventy-five percent of the total fee generated from a future settlement, violated Colo. RPC 1.5(d). It reasoned that the "division of fees required by the Covenant bore no such relation to the services performed." People v. Wilson, supra, 953 P.2d at 1294. The court prohibited the enforcement of the covenant against departing associates, but allowed for a quantum meruit distribution of the fees. People v. Wilson, supra, 953 P.2d at 1294-95.
This is not an attorney discipline case. The rules were adopted "to provide guidance to lawyers and to provide a structure for *1271 regulating conduct through disciplinary agencies," but not as a "basis for civil liability," and without more, Colo. RPC 1.5(d) "should not in and of itself give rise to a cause of action." Colo. RPC Scope (emphasis added); see Olsen & Brown v. City of Englewood, supra.
Here, the agreement was entered into by two capable, experienced personal injury attorneys "after thorough bargaining and negotiation and represent[ed] a mutually agreeable compromise and accord and satisfaction of any and all claims of the parties against each other." The parties were familiar with the cases involved, were generally aware of how much work had been performed on each case at the time of transfer, could make an educated estimate of how much additional work was required in the future, had presumably valued the cases, and were cognizant of other issues between them that may have had to be resolved. In contrast, in Wilson, new associates were required to sign the covenant upon, and as a condition of, employment when no comparable information was available; the allocation of the fees was admittedly arbitrary; the covenant may well have been coercive; and the covenant certainly may have infringed on the client's right to choose, retain, and discharge an attorney.
Thus, we conclude, as a matter of law, that the agreement is not void as against public policy and is enforceable in accordance with its terms.
Accordingly, the judgment is affirmed.
Judge VOGT and Judge LOEB concur.