RENDERED:  MAY 31, 2024; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2023-CA-0586-MR

JOEL FRANKLIN                                                              APPELLANT


v.       APPEAL FROM JEFFERSON CIRCUIT COURT
         HONORABLE MITCHELL PERRY, JUDGE
         ACTION NO. 22-CI-002904


EMERY LAW OFFICE, INC.                                              APPELLEES


OPINION AND ORDER
REVERSING AND REMANDING

** ** ** ** **

BEFORE:  THOMPSON, CHIEF JUDGE; A. JONES AND LAMBERT, JUDGES.

LAMBERT, JUDGE:  Joel Franklin appeals the Jefferson Circuit Court's order denying his motion to summarily dismiss – and granting appellee Emery Law Office, Inc.'s (Emery's) countermotion for summary judgment – regarding claims Emery asserted against him involving his alleged breach of their attorney fee sharing agreement.  Upon review, we reverse and remand.

# BACKGROUND

Joel Franklin is an attorney licensed to practice law in Kentucky. In March of 2020, he accepted employment with Emery, a Kentucky law firm. Consistently with his employment agreement with that entity, Emery paid Franklin a salary and gave him the opportunity to earn quarterly bonuses based on revenue he generated for the firm. His employment agreement also included what the parties characterize as a "break-up" provision that stated:

> Law Firm acknowledges that should Employee's employment relationship with Law Firm terminate, there may exist instances where clients of the Law Firm may choose to continue to be represented by the Employee. As for contingency fee cases where a client of the Law Firm chooses to continue representation with the Employee, upon severance of the employment of the Employee, whether voluntary or involuntary, Employee expressly acknowledges and agrees that Law Firm shall be entitled to payment of Seventy-Five percent of the contingency fee earned by Employee together with the repayment of all costs expended by the Law Firm prior to Employee's departure. The purpose of such agreement is to avoid disputes requiring time-consuming Quantum Meruit analysis or necessitating the involvement of clients and/or insurance adjusters which could in turn delay the settlement or distribution of settlement funds of a case.

Emery terminated Franklin's employment in April of 2022. Fourteen clients of Emery then chose to follow Franklin, who had been assigned by Emery to work on their cases, to his new solo law practice; and they transferred their cases to him. The instant appeal concerns ten of those cases, which were contingency

fee personal injury actions – some of which have already been resolved, some of which remain ongoing. The month after his termination, Franklin notified Emery that he had no intention of following the above-stated "break-up" provision because he believed it was contrary to public policy; thus, he contended Emery was only entitled to quantum meruit recovery from any eventual award or settlement of the ten clients' cases.

Disagreeing with Franklin's assessment, Emery filed suit against him in Jefferson Circuit Court for (1) a declaratory judgment that the "break-up" provision was valid and (2) damages for breach of contract. Franklin answered, reasserting his position set forth above. A period of discovery ensued. Both sides eventually moved for summary judgment, and the circuit court ultimately found in favor of Emery. This appeal followed. The salient details of the parties' respective arguments and additional relevant facts will be discussed in our analysis below.

## STANDARD OF REVIEW

Summary judgment is only appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Kentucky Rule of Civil Procedure (CR) 56.03. In general, denial of a motion for summary judgment is not appealable because of its interlocutory nature, but the case *sub judice* falls under an established exception. *Abbott v. Chesley*, 413

S.W.3d 589, 602 (Ky. 2013) (citation omitted). "[A]ppellate review [of a denial of a summary judgment motion] is proper if (1) the facts are not in dispute, (2) the only basis of the ruling is a matter of law, (3) there is a denial of the motion, and (4) there is an entry of a final judgment with an appeal therefrom." *Id.* (internal quotation marks and citations omitted). Our review of the record establishes that these elements have been met, and the only matters on appeal are purely issues of law which we review *de novo*. *3D Enters. Contr. Corp. v. Louisville & Jefferson Cnty. Metro. Sewer Dist.*, 174 S.W.3d 440, 445 (Ky. 2005) (citation omitted). We afford no deference to the trial court's application of the law. *Brady v. Commonwealth*, 396 S.W.3d 315, 317 (Ky. App. 2013) (citation omitted).

### ANALYSIS

We begin with a procedural issue: Emery has moved to strike Franklin's appellate brief because, in violation of Kentucky Rules of Appellate Procedure (RAP) 32(A)(3) and (4), his brief contains insufficient citations to the record supporting his factual allegations and otherwise indicating that his appellate arguments are preserved. It is unnecessary to discuss this point in more depth, however, because in his subsequent reply brief Franklin responded to Emery's motion by providing citations that we deem adequate and by otherwise curing the alleged deficiencies. *See, e.g.*, *Hollingsworth v. Hollingsworth*, 798 S.W.2d 145, 147 (Ky. App. 1990) (explaining if the required citation is not included in the brief

-4-

for appellant, the omission may be cured by providing the citation in the reply brief for appellant). Emery's motion to strike Franklin's brief is therefore denied.

We now proceed to the substance of this appeal. Contracts that violate public policy are unenforceable. *State Farm Mut. Auto. Ins. Co. v. Hodgkiss-Warrick*, 413 S.W.3d 875, 879-80 (Ky. 2013). "[A]n obligatory Rule of Professional Conduct for attorneys carries equal public policy weight as any public policy set forth in our Constitution or in a statute enacted by the General Assembly." *Lawrence v. Bingham Greenebaum Doll, L.L.P.*, 599 S.W.3d 813, 828 (Ky. 2019) (quoting *Greissman v. Rawlings and Associates, PLLC*, 571 S.W.3d 561, 567 (Ky. 2019)). Here, as he did below, Franklin asserts the "break-up" provision violated public policy and was therefore unenforceable because it violated two rules of professional conduct applicable to attorneys in Kentucky. The first of those rules is Kentucky Rules of the Supreme Court (SCR) 3.130(1.5), which provides in relevant part:

> (e) A division of a fee between lawyers who are not in the same firm may be made only if:
>
> > (1) the division is in proportion to the services performed by each lawyer, or, each lawyer assumes joint responsibility for the representation;
> >
> > (2) the client agrees to the arrangement and the agreement is confirmed in writing; and

(3) the total fee is reasonable.

However, this rule does not apply to divisions of fees between an attorney and the firm from which he or she departed that properly relate to work performed *prior* to the attorney's departure from the firm. *See* SCR 3.130(1.5), cmt. 8 ("Paragraph (e) does not prohibit or regulate division of fees to be received in the future for work done when lawyers were previously associated in a law firm."). Accordingly, to the extent the "break-up" provision merely attempted to set percentage values of yet-unearned contingent fees to reflect the firm's *past* contributions to cases that Franklin might end up taking from it – as an agreed means of compensating the firm for the value of its contributions – the provision is not violative of SCR 3.130(1.5). Nor, for that matter, is it at odds with the overall purpose of that rule. In the words of another court that addressed a similar agreement:

> [Rule] 1.5(e) is designed to prohibit brokering, to protect a client from clandestine payment and employment, and to prohibit aggrandizement of fees. Plainly, none of these concerns is implicated in this case. . . . The agreement is simply a mechanism for dividing an already existing fee. In other words, this is not a referral situation contemplated by the rule.

*McCroskey, Feldman, Cochrane & Brock, P.C. v. Waters*, 197 Mich. App. 282, 494 N.W.2d 826, 828 (1992) (citation omitted) (discussing ABA Model Rule 1.5(e) (upon which SCR 3.130(1.5)(e) is based)).

That said, assuming the "break-up" provision could indeed only be interpreted as a means of dividing fees to be received in the future for work done while Emery and Franklin were associated, there remains another problem – and the subject of Franklin's second public policy argument – involving SCR 3.130(5.6):

> A lawyer shall not participate in offering or making:
>
> > (a) a partnership or, shareholders, operating, employment, or other similar type of agreement that restricts the right of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement; or
> >
> > (b) an agreement in which a restriction on the lawyer's right to practice is part of the settlement of a client controversy.

"SCR 3.130, Rule 5.6 is designed to protect society at large by allowing clients to freely choose counsel who can best represent their interests and by not limiting an attorney's right to practice law . . . [and] represents a fundamental and clear statement of public policy." *Greissman*, 571 S.W.3d at 567. To be sure, the "break-up" provision does not include unqualified promises not to practice within a particular geographic or substantive area, or not to represent any of the firm's clients, or restrictions on client contact or use of client information – promises that would obviously violate this rule.

The provision includes a financial disincentive that equates to a *penalty*. For context, we note that while no Kentucky caselaw has precisely addressed this point,[1] other courts have found that contingent fee splitting agreements between a firm and a departing attorney are not violative of rules equivalent to SCR 3.130(5.6), and are thus "not unenforceable," where the percentages of fee sharing:

> [R]elate the amount of time when the firm had responsibility for the matter to the amount of time when the departing attorney had responsibility for the matter. They attempt to forecast a likely quantum meruit division by using time as a surrogate for the value contributed by each of the respective parties. The forecasts may not correspond perfectly with the dictates of quantum meruit in every instance, but they are certainly not "arbitrary." They represent "a reasonable attempt to relate [the firm's] fee entitlement to the amount of work done on a given file before it left the firm." *McCroskey, Feldman, Cochrane & Brock, P.C. v. Waters*, 494 N.W.2d at 829.

---

[1] In *Cincinnati Bar Ass'n v. Hackett*, 129 Ohio St.3d 186, 950 N.E.2d 969 (2011), an attorney's employment agreement with his associates restrained them from taking clients with them when the associates left the attorney's firm by, among other things, requiring a departing associate to remit to the attorney 95% of the fees generated in a case involving a former firm client, *regardless* of the proportion of the work that the attorney and the associate performed on the client's case. The Ohio Supreme Court found that the attorney violated Ohio's Professional Conduct Rules 5.6 and 1.5 (*i.e.*, Ohio's equivalents to SCR 3.130(1.5) and SCR 3.130(5.6)). *Hackett* was cited with approval in *In re Truman*, 7 N.E.3d 260 (Ind. 2014), where the Indiana Supreme Court disciplined an attorney for violating Indiana Professional Conduct Rule 5.6 (Indiana's equivalent to SCR 3.130(5.6)) for requiring his associates to sign employment agreements that "included provisions for dividing fees if Associate left the firm that were structured to create a strong financial disincentive to prevent Associate from continuing to represent clients he had represented while employed by the firm." The Kentucky Supreme Court, citing SCR 3.130(5.6), then issued reciprocal discipline to attorney Truman based on the same set of facts. *See Kentucky Bar Association v. Truman*, 457 S.W.3d 325 (Ky. 2015).

*Bennett v. Ashcraft & Gerel, LLP*, 259 Md. App. 403, 442-43, 303 A.3d 1237, 1260-61 (2023).

By contrast, the "break-up" provision at issue here provides no formula or procedure for dividing fees on any given case reasonably calculated to compensate the firm for the resources expended by the firm on the representation as of the date of the lawyer's departure. Rather, it arbitrarily assesses the same fee percentage – "together with the repayment of all costs" – to *any* case Franklin chose to take with him upon departing the firm. Because this measure of recovery was applicable to all cases regardless, the "break-up" provision had the effect of restricting Franklin's practice after termination: Perhaps with the benefit of hindsight, seventy-five percent "together with the repayment of all costs" might end up being fair in some cases; but it always has the very real potential of being unfair in every case. That is, it may well end up being an amount so high as to discourage the attorney from taking the case, thereby denying the client the attorney of his or her choice – particularly in a case that might require a lengthy and complicated trial to obtain recovery.

Emery, for its part, nevertheless insists that its "break-up" provision is valid. First, it likens this provision to one for "liquidated damages," and notes that liquidated damage provisions can be enforceable when the actual damages are not "grossly disproportionate" to the liquidated damage amount. *See, e.g.*, *Louisville*

*and Jefferson County Metropolitan Sewer District v. T+C Contracting, Inc.*, 570 S.W.3d 551, 573 (Ky. 2018). However, the general function of liquidated damage clauses is to provide "[j]ust compensation for the injury sustained[.]" *Fidelity & Deposit Co. of Maryland v. Jones*, 256 Ky. 181, 75 S.W.2d 1057, 1060 (1934) (citation omitted). Here, we fail to see how a single, inflexible percentage of recovery "together with the repayment of all costs," arbitrarily applied to every case a departing attorney takes upon departure, could yield just compensation in every such case.

Emery also notes that seven of the ten cases Franklin took from it have now settled; and it broadly asserts that the evidence adduced below regarding the amount of work Franklin put into each of those cases following his departure supports, in its view, that seventy-five percent of what Franklin recovered on those cases, "together with the repayment of all costs," would not be grossly disproportionate to what it should be owed for what it contributed.

But the issue before this Court is the validity of the "break-up" provision, not the reasonable or "quantum meruit" value of Emery's contribution to the various cases affected by it. Apart from that, Emery's analysis of the validity of the "break-up" provision in this context – *i.e.*, that because it *could* yield an amount of recovery that is not grossly disproportionate to its actual damages, its validity should therefore only be considered with the benefit of *hindsight* – ignores

-10-

the public policy at issue. Again, this type of provision creates an unreasonable disincentive because, due to its lack of any rational metric, it *can* likely yield an amount of recovery that is grossly disproportionate to Emery's actual damages, and it *can* therefore result in an improper penalty. To permit the validity of this type of arbitrary provision to be assessed only through the lens of hindsight would incentivize firms to continue using this type of arbitrary provision.

Lastly, Emery argues the "break-up" provision should be enforceable against Franklin because, at the time he executed his employment agreement with Emery, he was a sophisticated party who negotiated the terms of their contract and should have been aware of its contents and ramifications. While that much is undisputed, it makes little difference under the circumstances. As stated at the onset of our analysis, contracts that violate public policy are unenforceable – regardless of whether parties agree to them. *See Jones*, 75 S.W.2d at 1060 ("Just compensation for the injury sustained is the principle at which the law aims, and the parties will not be permitted, by express stipulation, to set this principle aside.").

## CONCLUSION

We disagree with the circuit court's determination that the "break-up" provision was enforceable. Accordingly, we reverse the summary judgment of the

Jefferson Circuit Court in favor of Emery and remand this matter for further proceedings consistent with this Opinion.

THOMPSON, CHIEF JUDGE, CONCURS.

JONES, A., JUDGE, CONCURS IN RESULT ONLY.

ENTERED: ____05/31/2024____                    _____
                                                            JUDGE, COURT OF APPEALS

BRIEFS FOR APPELLANT:              BRIEF FOR APPELLEE:

Joseph E. Blandford, Jr.                   Andrew S. Epstein
Louisville, Kentucky                        Louisville, Kentucky