**HACKETT, d.b.a. Hackett Law Offices,**

v.

**MOORE et al.**

2010-Ohio-6298.]

Court of Common Pleas,
Hamilton County, Ohio.

Decided May 21, 2010.

108

Hackett Law Offices and Paul L. Hackett, for plaintiff.

Santen & Hughes and Deepak K. Desai, for defendant.

---

PAT DeWINE, Judge.

{¶ 1} This matter comes before the court on defendant Gregory A. Moore's motion to dismiss pursuant to Civ.R. 12(B)(6). The primary issue in this case is the enforceability of a provision in an employment agreement under which an attorney agrees that upon leaving employment, he will pay his former employer 95 percent of attorney fees earned in a contingent-fee settlement. For the reasons discussed herein, the court finds the agreement unenforceable because it violates the Ohio public policy of allowing a client to obtain counsel of his choice.

{¶ 2} Moore was employed in the law office of plaintiff, Paul L. Hackett, d.b.a. Hackett Law Offices, from February 11, 2002, until April 14, 2009. In connection with his employment with Hackett, Moore entered into a written employment agreement. Five days prior to the termination of his employment relationship with Hackett, Moore was retained by Dan Vanderpool to represent him in connection with an automobile accident. After Moore left Hackett's employment, Vanderpool chose to continue to retain Moore to represent him. Ultimately, the case was settled. Upon settlement of the case, Moore refused to pay Hackett 95 percent of the attorney fees earned in the settlement. Similarly, the defendant's insurer in the automobile-accident case, the Progressive Corporation, refused to identify Hackett as loss payee on the settlement check.

{¶ 3} Hackett asserts claims against Moore for breach of contract, unjust enrichment, fraudulent inducement/detrimental reliance, conversion, and injunctive relief. He also asserts claims against Progressive for conversion and tortious interference with a contract.

{¶ 4} Moore argues that the terms of the employment agreement are unenforceable because they violate the Ohio Rules of Professional Conduct and the public policy of Ohio. Two provisions of the employment agreement are at issue:

> It is understood that upon his termination from Hackett Law Offices, Gregory Moore will not continue to represent or attempt to represent those clients who have sought legal representation from Hackett Law Offices and whose claims have been assigned to Gregory Moore to represent.[1]

> If a client should choose to leave Hackett Law Offices to be represented by Gregory Moore after his termination, Gregory Moore agrees to pay Hackett

---

1. Employment Agreement, Section 3.

Law Offices 95% of the attorney's fee generated based on a thirty-three percent 33% contingent fee agreement.[2]

Moore contends that these provisions violate Prof.Cond.R. 5.6 and 1.5:

### Rule 5.6:  Restrictions on Right to Practice

A lawyer shall not participate in offering or making either of the following:

(a) A partnership, shareholders, operating, employment, or other similar type of agreement that restricts the right of a lawyer to practice after termination of the relationship, except an agreement concerning benefits upon retirement;

\* \* \*

### Rule 1.5:  Fees and Expenses

(e) Lawyers who are not in the same *firm* may divide fees only if all of the following apply:

(1) the division of fees is in proportion to the services performed by each lawyer or each lawyer assumes joint responsibility for the representation and agrees to be available for consultation with the client;

(2) the client has given written consent after full disclosure of the identity of each lawyer, that the fees will be divided, and that the division of fees will be in proportion to the services to be performed by each lawyer or that each lawyer will assume joint responsibility for the representation;

(3) except where court approval of the fee division is obtained, the written closing statement in a case involving a contingent fee shall be signed by the client and each lawyer and shall comply with the terms of division (c)(2) of this rule;

(4) the total fee is reasonable.

{¶ 5} The employment agreement at issue appears to run afoul of the requirements of both Prof.Cond.R. 5.6 and 1.5.  The requirement that 95 percent of any fee be remitted to the attorney's former employer for all practical purposes "restricts the right of a lawyer to practice after termination of the relationship" in violation of Prof.Cond.R. 5.6.  While such a provision might not completely preclude a client from continuing legal representation with the departing attorney, the effect of the 95 percent fee-sharing requirement is to make it economically impractical for the lawyer to continue the representation.  Further, the 95 percent fee-splitting arrangement would seem to violate Prof.Cond.R. 1.5 as well.  The division of fees does not appear to be "in proportion to the services

2.  Id., Section 4.

performed by each lawyer," and there is no indication that the client gave written consent to the arrangement.

{¶ 6} This conclusion is consistent with advice provided by the Ohio Supreme Court's Board of Commissioners on Grievances and Discipline. In Advisory Opinion 91–3, the board opined that "a proposed employment agreement is unethical when it contains a separation provision requiring a departing associate to pay the firm a percentage of fees earned thereafter from former firm clients who have chosen to become clients of the departing associate." The board concluded that such a provision violated DR 2–108, a provision that is analogous to current Prof.Cond.R. 5.6, because its practical effect is to interfere with a client's freedom of choice of counsel:

> An employment agreement with a financial disincentive to serving clients improperly places a burden on the departing attorney and impairs clients' freedom to choose counsel. The financial burden placed on the attorney results from a client's valid choice to choose counsel. The client's freedom is impaired because the financial disincentive to the attorney may interfere with the attorney-client relationship by discouraging or preventing the departing associate from serving clients who wish to continue being represented by him. Although such agreements may not facially appear to limit professional autonomy or a client's freedom to choose, the practical effect may limit both. Such payment provisions which penalize the attorney and ultimately his clients for exercising valid choices are prohibited by DR 2–108(A). Under the rule, professional autonomy and a client's freedom to choose are not outweighed by a law firm's interest in protecting itself from competition.[3]

In addition, the board suggested that the agreement also likely violated the restrictions in DR 2–107(A), the predecessor to Prof.Cond.R. 1.5(e), on sharing fees among lawyers not of the same firm.

{¶ 7} Opinions of the Board of Commissioners on Grievances and Discipline are informal and nonbinding.[4] They are, however, issued only after a thorough and comprehensive vetting process authorized by the Ohio Supreme Court.[5] In this case, the advisory opinion at issue has remained in effect for almost 20 years without rescission or modification. While not determinative, the

---

3. The advisory opinion was issued under the Disciplinary Rules of the Code of Professional Responsibility, which was previously in effect in Ohio. DR 2–108 and 2–107 are substantially similar to Prof.Cond.R. 1.5 and 5.6.

4. See Supreme Court Rules for the Government of the Bar of Ohio, Appx. II, Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline of the Supreme Court ("BCGD Proc.Reg.") 20(A)(1).

5. BCGD Proc.Reg. 20(A).

advisory opinion certainly provides support for this court's conclusion that the employment agreement at issue violates the ethical rules.

{¶ 8} That a contract term violates the Ohio Rules of Professional Conduct does not automatically make it unenforceable. The preamble to the rules cautions that "[v]iolation of a rule should not itself give rise to a cause of action against a lawyer" and "the purpose of the rules can be subverted when they are invoked by opposing parties as procedural weapons."[6] The question is whether the rule embodies a public policy of the state so that enforcement of the employment contract would thwart that public policy.

{¶ 9} "It is a generally accepted rule that contract terms that violate public policy are unenforceable."[7] The Ohio Supreme Court has recognized that there exists a strong public-policy interest in permitting a party's "continued representation by counsel of his or her choice."[8] Prof.Cond.R. 5.6 is designed to protect the public-policy interest in allowing a client to hire the attorney of his or her choice. As the comments to the rule explain, an employment agreement like the one at bar is objectionable not only because it limits the professional autonomy of the lawyer but also because it "limits the freedom of clients to choose a lawyer."[9] Simply put, "the purpose of the rule is to ensure the public has a choice of counsel."[10]

{¶ 10} In this situation, the public-policy concern is even more pronounced because at stake is not just a party's right to choose counsel but the party's right to remain with his existing lawyer. Presumably, a client has a particularly strong issue in continuing to work with a lawyer in whom he has placed confidence and who is already knowledgeable about his case.

{¶ 11} There can be no real question that the agreement at issue limits the freedom of clients to choose a lawyer. If contracts of the sort entered into between Hackett and Moore could be enforced, clients would have no real choice but to remain with the former law firm of the departing employee. Few departing lawyers would be willing or able to take on the substantial risk

---

6. Ohio Rules of Professional Conduct, Preamble.

7. *Sammarco v. Anthem Ins. Co.* (1988), 131 Ohio App.3d 544, 551, 723 N.E.2d 128; see also *King v. King* (1900), 63 Ohio St. 363, 372, 59 N.E. 111 ("Courts refuse to enforce or recognize certain classes of acts because against public policy on the ground that they have a mischievous tendency, and are thus injurious to the interests of the state").

8. *Kala v. Aluminum Smelting & Refining Co.* (1998), 81 Ohio St.3d 1, 5–6, 688 N.E.2d 258.

9. Comment 1 to Prof.Cond.R. 5.6.

10. *Cohen v. Lord, Day & Lord* (1989), 75 N.Y.2d 95, 98, 551 N.Y.S.2d 157, 550 N.E.2d 410.

inherent in a contingency-fee case, and invest the time and resources necessary, knowing that even if he is successful, 95 percent of the fee earned would have to be paid to the former employer.

{¶ 12} Hackett contends that the employment agreement should be enforceable because it is necessary to protect the substantial investment his firm has made in its attorneys and its clients. Ohio law, however, puts a client's right to counsel of his or her choice above such concerns. Hackett, in choosing to employ other attorneys to practice law with him, should have been fully aware of the risks that the attorney ultimately would leave and take clients with him. While the court is not unmindful of the need for attorneys to protect the investments that they have made, attorneys must do so within the confines of the Ohio Rules of Professional Conduct.

{¶ 13} Moore is not blameless in the situation. He voluntarily entered into the employment contract, a contract that ran afoul of the ethical rules. But the focus must be on the client's freedom of choice. To enforce a contract that would make it virtually impossible for a client to remain with the attorney of his choice would violate Ohio public policy. Because the contract provisions at issue violate public policy, Hackett's claim for breach of contract against Moore must be dismissed.[11]

{¶ 14} The other counts of the complaint are also subject to dismissal. Count two asserts a claim against Moore for unjust enrichment. Unjust enrichment or quantum meruit is an equitable principle that " 'one person should not be permitted unjustly to enrich himself at the expense of another, but should be required to make restitution of or for property or benefits received, retained or appropriated, where it is just and equitable that such restitution be made, *and where such action involves no violation or frustration of law or opposition to public policy, either directly or indirectly.*' "[12] Ordinarily, one may not assert a claim for unjust enrichment if a written contract exists.[13] Moreover, courts may refuse to provide the equitable remedy for unjust enrichment if doing so would defeat public policy.[14] In *Leoris v. Dicks,* the court found a fee-splitting

---

11. The court has not been presented with the question of whether an arrangement that called for a splitting of a fee between the attorney and his former law firm in a manner that was more commensurate with the investment made by the former law firm and that presented less of a limitation on a client's right to counsel of his choice might be enforceable.

12. (Emphasis added.) *Cosby v. Cosby* (2001), 141 Ohio App.3d 320, 324, 750 N.E.2d 1207, quoting 66 Am.Jur.2d (1973) 935, Restitution and Implied Contracts, Section 3.

13. *Sammarco,* 131 Ohio App.3d at 557, 723 N.E.2d 128.

14. *Leatherbury v. Reagan* (1987), 34 Ohio App.3d 291, 293, 518 N.E.2d 58 (court will not provide equitable relief for unjust enrichment if doing so would defeat the public policy adopted by the legislature).

agreement among attorneys unenforceable as against public policy.[15] Because the contract was unenforceable, the court also found that the plaintiff could not seek to recover the reasonable value of his services in quantum meruit:

> Where enforcement of an illegal contract is sought, the courts will aid neither party but will leave them where they have placed themselves, since the parties are *pari delecto*, and can recover nothing under the contract. Therefore, we find that that plaintiff is foreclosed from recovery on the theory of *quantum meruit* because unprofessional conduct, as exhibited here, clearly violated stated canons of ethics that bar recovery. Accordingly we find that plaintiff's conduct, which clearly violated established canons of ethics, warrants forfeiture of his attorney fees.[16]

To allow Hackett to recover in quantum meruit would clearly frustrate the Ohio public policy barring such employment arrangements. That result would only encourage the proliferation of these types of employment terms. Accordingly, count two is also dismissed.

{¶ 15} Count three alleges that Hackett was fraudulently induced to enter into the employment contract by Moore's representation that he would pay 95 percent of settlement proceeds to Hackett. A claim for fraudulent inducement requires the establishment of justifiable reliance.[17] This claim is subject to dismissal because Hackett, as a matter of law, could not have justifiably relied upon any such promise in light of the ethical rules barring such arrangements.

{¶ 16} Count four and count five allege conversion claims against Moore and Progressive, asserting that Moore and Progressive wrongfully asserted control over settlement proceeds to which Hackett was entitled. These claims are subject to dismissal because a claim for conversion requires that the plaintiff establish "a right to possession of the property at the time of the conversion."[18] As a matter of law, Hackett cannot establish a right to possession, because of the clear constraints imposed by the ethical rules and Ohio public policy.

{¶ 17} Count six alleges that Progressive tortiously interfered with Hackett's employment agreement with Moore by failing to identify Hackett as a loss payee on the settlement check. Because this court already has found the

---

15. *Leoris v. Dicks* (1986), 150 Ill.App.3d 350, 351–352, 103 Ill.Dec. 584, 501 N.E.2d 901.

16. Id. at 354, 103 Ill.Dec. 584, 501 N.E.2d 901.

17. *Diamond Wine & Spirits, Inc. v. Dayton Heidelberg Distrib. Co.,* 148 Ohio App.3d 596, 774 N.E.2d 775.

18. *Dice v. White Family Cos.,* 173 Ohio App.3d 472, 2007-Ohio-5755, 878 N.E.2d 1105.

pertinent provisions of the employment contract to be unenforceable, the claim for tortious interference is dismissed.

{¶ 18} Count seven seeks injunctive relief against Moore, prohibiting Moore from settling cases without paying Hackett the portion of the settlement proceeds that Hackett claims he is due under the employment agreement. Hackett, however, is not entitled to injunctive relief to enforce employment terms that violate public policy.

{¶ 19} For these reasons, defendant's motion to dismiss is granted.

So ordered.