CINCINNATI BAR ASSOCIATION *v.* HACKETT.

[Cite as *Cincinnati Bar Assn. v. Hackett,*

129 Ohio St.3d 186, 2011-Ohio-3096.]

*Attorneys at law — Misconduct — Participation in employment agreement that restricts rights of an attorney to practice after termination of agreement — Consent-to-discipline agreement — Public reprimand.*

(No. 2011-0308 — Submitted March 23, 2011 — Decided June 30, 2011.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and Discipline of the Supreme Court, No. 10-082.

_____

**Per Curiam**.

{¶ 1} Respondent, Paul L. Hackett III of Cincinnati, Ohio, Attorney Registration No. 0040638, was admitted to the practice of law in Ohio in 1988. On October 11, 2010, relator, Cincinnati Bar Association, filed a complaint charging respondent with offering or participating in an employment agreement that restricts the right of a lawyer to practice after termination of the relationship and that provides for an illegal or clearly excessive fee.

{¶ 2} The parties submitted a consent-to-discipline agreement pursuant to Section 11 of the Rules and Regulations Governing Procedure on Complaints and Hearings Before the Board of Commissioners on Grievances and Discipline of the Supreme Court ("BCGD Proc.Reg."). A panel of the Board of Commissioners on Grievances and Discipline recommended the acceptance of the proposed consent to discipline, affidavit, exhibits, and rule violations. The board adopted the panel's recommendation, as do we. Accordingly, we publicly reprimand respondent for his misconduct.

**Misconduct**

**{¶ 3}** The stipulated facts of this case and respondent's admissions show that in February 2002, respondent entered into an employment agreement with an associate that stated that upon his termination, the associate would no longer continue to represent or attempt to represent clients of respondent's firm whose claims had been assigned to him for representation. The employment agreement further provided that if a client chose to leave respondent's firm and thereafter be represented by the associate, the associate would pay respondent's firm 95 percent of any attorney fees generated by that case, based upon a 33.3 percent contingent-fee agreement. Respondent also used the same form of employment contract when he hired another associate.

**{¶ 4}** On April 14, 2009, ten days before his termination, the associate executed a contingency-fee agreement on behalf of respondent's law firm to represent a client in a personal-injury matter. On June 30, 2009, the client advised respondent that he had decided to retain respondent's former associate to handle his case. Respondent acknowledged receipt of the client's letter on August 10, 2009, and requested instructions from the client as to the disposition of his file, but he never received a response.

**{¶ 5}** In the fall of 2009, respondent learned that the client's case had been settled and that the settlement check had been sent to his former associate. Respondent filed suit in the Hamilton County Court of Common Pleas on October 29, 2009, to enforce the employment agreement and to recover fees paid to his former associate. The trial court granted the associate's motion to dismiss the complaint, holding that the employment agreement violated Ohio's public policy favoring a client's freedom to choose a lawyer and observing that it may also violate Prof.Cond.R. 1.5 and 5.6. *Hackett v. Moore*, 160 Ohio Misc.2d 107, 2010-Ohio-6298, 939 N.E.2d 1321, ¶ 5, 9-10. Respondent did not appeal that decision and has disavowed further use of the employment contract.

**{¶ 6}**   Based upon these facts, the parties have stipulated and the panel and board have found that respondent's conduct violated Prof.Cond.R. 1.5 (prohibiting a lawyer from making an agreement for, charging, or collecting an illegal or clearly excessive fee) and 5.6 (prohibiting a lawyer from offering or participating in an employment agreement that restricts the right of a lawyer to practice after termination of the relationship).

**{¶ 7}**   "There is nothing more critical to the professional relationship between attorney and client than the trust and confidence of the person being represented." *Fox & Assoc. Co., L.P.A. v. Purdon* (1989), 44 Ohio St.3d 69, 71, 541 N.E.2d 448.  In *Akron Bar Assn. v. Miller* (1997), 80 Ohio St.3d 6, 9, 684 N.E.2d 288, we recognized that a lawyer's job is not to sell goods or a service or to simply supply the means of achieving a client's goals.  Rather, a lawyer's fiduciary duty to his client requires him to deliberate with and counsel the client to make wise decisions in furtherance of those goals.  Id., citing Kronman, The Lost Lawyer (1993) 128-129.  To that end, the lawyer's duties of trust and confidence and the ethical rules incumbent upon Ohio lawyers require that "the personal desires of the lawyer must be subordinated to those of the client."  Id.

**{¶ 8}**   We have held that "[a] client has an absolute right to discharge an attorney or law firm at any time, with or without cause, subject to the obligation to compensate the attorney or firm for services rendered prior to the discharge." *Reid, Johnson, Downes, Andrachik & Webster v. Lansberry* (1994), 68 Ohio St.3d 570, 629 N.E.2d 431, paragraph one of the syllabus.  This right would be hollow if the discharged attorney could prevent other attorneys from assuming the client's representation.  As the Official Comments to Prof.Cond.R. 5.6 explain, any agreement that restricts the right of lawyers to practice after leaving a firm limits both their professional autonomy and the client's freedom to retain a lawyer of their choice.  Prof.Cond.R. 5.6, Official Comment [1].

**{¶ 9}**   In this case, respondent sought to restrain his former associates from taking clients with them when they left his firm.  His employment contract required a departing associate who continued to represent the firm's former clients to remit 95 percent of the fees generated in the clients' cases to respondent regardless of the proportion of the work that each attorney performed.   If enforced, this clearly excessive fee would create an economic deterrent for the departing attorney that would adversely affect the clients' right to retain an attorney of their own choosing.  Therefore, we agree that respondent has violated both Prof.Cond.R. 1.5 and 5.6.

### Sanction

**{¶ 10}** In recommending a sanction for respondent's misconduct, the board considered the aggravating and mitigating factors listed in BCGD Proc.Reg. 10. The parties have stipulated to, and the panel and board have found, just one aggravating factor—respondent's use of the unethical employment agreement with more than one associate.  See BCGD Proc.Reg. 10(B)(1)(d).  As mitigating factors, however, the panel and board cite respondent's lack of a prior disciplinary record, the absence of a dishonest motive, his cooperation in this disciplinary proceeding, and evidence of his good character, including his exemplary service as a Lt. Colonel in the United States Marine Corps.  See BCGD Proc.Reg. 10(B)(2)(a), (b), (d), and (e).  We accept all but one of these findings.

**{¶ 11}** Pursuant to BCGD Proc.Reg. 10(B)(2)(b), the absence of a dishonest or selfish motive may be considered as a mitigating factor.  Conversely, the presence of a dishonest or selfish motive may be considered as an aggravating factor pursuant to BCGD Proc.Reg. 10(B)(1)(b).  While respondent did not possess a dishonest motive, the employment agreement that he entered into with his associates provided that he would receive 95 percent of the fees generated if a client followed the associate when the associate left the firm, regardless of the amount of work respondent performed on a case.  Therefore, we conclude that

4

respondent possessed a selfish motive, consider that motive to be an aggravating factor, and reject the parties' stipulation that respondent's lack of a dishonest motive is a mitigating factor. Nonetheless, in light of the remaining mitigating factors and the fact that no client suffered harm, we agree that a public reprimand is the appropriate sanction for respondent's misconduct.

{¶ 12} Accordingly, respondent is publicly reprimanded for his violations of Prof.Cond.R. 1.5 and 5.6. Costs are taxed to respondent.

Judgment accordingly.

O'CONNOR, C.J., and PFEIFER, LUNDBERG STRATTON, O'DONNELL, LANZINGER, CUPP, and MCGEE BROWN, JJ., concur.

_____

Rosemary D. Welsh and Linda A. Ash, for relator.

Gallagher Sharp, Timothy T. Brick, and Monica A. Sansalone, for respondent.

_____